IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN - 1 2011

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | | |
|---|---|---|
| DARLA WALKER, | § | |
|     PLAINTIFF, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:10-CV-680-A |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
|     DEFENDANT. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Darla R. Walker ("Walker") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying her claims for disability insurance benefits under Title

II and supplemental security income ("SSI") benefits under Title XVI of the Social Security Act

("SSA"). Walker applied for SSI benefits on August 1, 2003, and disability insurance benefits

on November 19, 2003, alleging disability commencing February 3, 2003. (Tr. 98-101, 576-79,

705.)

1

After her applications for benefits were denied initially and on reconsideration, Walker requested a hearing before an administrative law judge (the "ALJ"). (Tr. 63-70, 78-85, 705.) The ALJ held a hearing in January 2006 and issued an unfavorable decision on March 22, 2006. (Tr. 27-56, 584-93, 705). The Appeals Council vacated the decision and remanded the case to the ALJ to resolve issues related to, *inter alia*, Walker's obesity and mental impairments. (Tr. 599-603, 705.) The ALJ held a second hearing on December 7, 2006, and issued a new decision on March 26, 2007, in which he found that Walker was not disabled and was not entitled to disability insurance or SSI benefits because she retained the ability to perform her past relevant work. (Tr. 11-21, 705). The Appeals Council denied Walker's request for review. (Tr. 6-8, 705.)[1]

Thereafter, Walker appealed the Commissioner's decision by filing suit in the United States District Court for the Northern District of Texas in cause number 4:08-CV-0094-Y. (Tr. 705.) On December 19, 2008, the Court adopted the Magistrate Judge's Findings, Conclusions and Recommendation and remanded Walker's case back to the Commissioner pursuant to sentence four of 42 U.S.C. 405(g). (Tr. 705, 756-57.) Based upon the Court's order, the Appeals Council remanded the case to the ALJ for further development. (Tr. 705, 720-22.) The ALJ held another hearing on September 23, 2009. (Tr. 705, 1001-46). On October 30, 2009, the ALJ issued a new decision in which he again found that Walker was not disabled and not entitled to disability insurance or SSI benefits because she retained the ability to perform her past

---

[1] While this review was pending, Walker filed a new set of disability applications on September 27, 2007. (Tr. 706.) The Disability Determination Services ("DDS") limited its review of the applications as of March 27, 2007, the day after the ALJ's March 26, 2007 decision. (*Id.*) On January 31, 2008, the DDS found that Walker was disabled as of March 27, 2007. (*Id.*) After reviewing the evidence, the AL found there was "no good cause to justify reopening the September 2007 applications." (*Id.*)

2

relevant work. (Tr. 702-19; *see* Tr. 706.) The Appeals Council denied Walker's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 680-82.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or

equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley,* 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## III. ISSUES[2]

Walker presents the following issues:

1. Whether the ALJ's residual functional capacity ("RFC") determination is supported by substantial evidence because the ALJ failed to properly consider all of Walker's functional limitations from February 3, 2003 through March 26, 2007 and resolve all conflicts in the evidence; and

2. Whether the ALJ erred at Step Four by determining that Walker could return to her past relevant work after having found that Walker suffered from severe impairments that limited her ability to perform work-related activities.

## IV. ADMINISTRATIVE RECORD AND ALJ DECISION

In his October 30, 2009 decision, the ALJ stated that the "central issue now . . . is whether claimant was disabled . . . in the critical period between February 3, 2003 and March 26, 2007." (Tr. 706 (footnotes omitted).) The ALJ found that Walker met the disability insured status requirements of the SSA through March 31, 2008 and that she had not engaged in substantial gainful activity since February 3, 2003. (Tr. 718.) The ALJ further found that Walker had the severe impairments of "degenerative disc disease in the cervical and lumbar spines; osteoarthritis in the knees; chronic obstructive pulmonary disease with nicotine abuse; obesity; hypothyroidism; urinary stress incontinence, status-post hysterectomy and repeat bladder repair procedures; histories of headaches, fibromyalgia, plantar fasciitis and bilateral fibrocystic breasts; and major depressive disorder and anxiety disorders, with symptoms of a personality disorder, NOS." (Tr. 718; *see* Tr. 707.)

Next, the ALJ held that none of Walker's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 718.) As to Walker's RFC,

_____

[2] In an effort to improve clarity and efficiency in analyzing the issues, the Court has rephrased and summarized the issues set forth by Walker.

the ALJ stated:

> Claimant retained the exertional capacity for the sustained performance of a wide range of sedentary work activities in the critical period: she could not walk for prolonged periods over ten continuous minutes and must have been permitted to change positions on an hourly basis. . . . Claimant had this sustained work-related mental limitation in the critical period: she could not perform complex work instructions.

(Tr. 718-19.)  The ALJ opined, based on his RFC assessment, that Walker was able to perform her past relevant work as an appointment clerk and receptionist; thus she was not disabled.  (*Id.*)

## V. DISCUSSION

### A. RFC Determination

Walker argues, in essence, that the ALJ's RFC determination is not supported by substantial evidence.  Specifically, Walker argues that the ALJ failed to properly consider all of her functional limitations during the time period from February 3, 2003 through March 26, 2007.  (Pl.'s Br. at 1.)  In support of this argument, Walker claims that the ALJ: (1) failed to resolve the conflicts in the evidence; (2) failed to properly consider all of Walker's functional limitations; and (3) failed to properly evaluate the medical opinion evidence.  (Pl.'s Br. at 11-15.)

RFC is what an individual can still do despite her limitations.[3]  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id.  See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.  *Id.*  RFC is not the least an individual can do, but the most.  SSR 96-8p at *2.  The RFC

---

[3] The Commissioner's analysis at Steps Four and Five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005).  The Commissioner assesses the RFC before proceeding from Step Three to Step Four. *Id.*

assessment is a function-by-function assessment, with both exertional and nonexertional factors to be considered and is based upon all of the relevant evidence in the case record. *Id.* at *3-5. The ALJ will discuss the claimant's ability to perform sustained work activity on a regular and continuing basis, and will resolve any inconsistencies in the evidence. *Id.* at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, and must consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

### 1. Failure to Resolve Conflicts

As to her claim that the ALJ failed to resolve the conflicts in the evidence, Walker argues:

> In the Commissioner's most recent decision, the ALJ has found that the Plaintiff is limited to a modified range of sedentary work, consistent with the opinion of Dr. Raulston. However, while the ALJ adopted Dr. Raulston's finding that the Plaintiff requires the opportunity to alternate position between sitting and standing on an hourly basis and cannot walk for prolonged periods of over ten

7

continuous minutes, the ALJ never addressed Raulston's further opinion that the Plaintiff is limited in reaching in all directions, including overhead reaching and can only perform reaching occasionally. According to the <u>Dictionary of Occupational Titles</u>, published by the U.S. Department of Labor and its companion volumes, the jobs relied upon by the ALJ in his decision, receptions and appointment clerk, both require frequent reaching . . . . Thus, resolution of the issue as to whether the Plaintiff can perform frequent reaching is critical in determining whether she can return to her past relevant work.

The District Court specifically remanded this matter to the Commissioner to address the inconsistencies between the residual functional capacity assessments of Drs. Raulston and Simonds. The Commissioner, however, failed to do so. The ALJ never addressed the manipulative limitations described by Dr. Raulston, a Board-certified orthopedic specialist, nor did he indicate any reasons for disagreeing with Dr. Raulston's assessment. Indeed, the ALJ described Dr. Raulston thusly: "an examining physician, is an experienced medical expert and consultative examiner, he is Board-certified in orthopedic surgeon (sic) and he is not prone to overstatement of claimant limitations. I find that his post-exam functional capacity opinion is consistent with and well supported by the evidence of record and I generally accept the limitations he specified[.]"

(Pl.'s Br. at 11-12 (internal citations omitted).)

In this case, the ALJ determined that Walker had the physical RFC to perform a wide range of sedentary activities[4] but that she could not walk for prolonged periods over ten continuous minutes and must be permitted to change positions on an hourly basis. (Tr. 718-19.) In support of his RFC assessment, the ALJ considered, *inter alia*, the following: (1) treatment records dated in 2003 from Northwest Family Practice indicating Walker was treated for

---

[4] Sedentary work is defined as follows:

[I]nvolves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a); *see* 20 C.F.R. § 416.927(a). To perform the full range of sedentary work, an individual must be able to remain in a seated position for approximately six hours of an eight-hour workday. SSR 83-10, 1983 WL 31251, at *5 (S.S.A. 1983).

8

hypothyroidism, arthritic pains in the knees, neck and back (Tr. 710; *see* Tr. 257-64); (2) treatment records showing Walker received care at the Gray Back & Neck Pain Center from March 2003 until April 2004 for neck and low back pains after being injured in a motor vehicle accident, and she reported in April 2004 that she was doing much better (Tr. 710; *see* Tr. 311-28); (3) treatment notes from an examination performed by Juan Saitis, M.D. ("Saitis), on February 6, 2004 indicating that Walker had no other upper or lower extremity abnormalities or deficiencies besides left knee crepitus, had full range of motion in her upper and lower extremities, and had full bilateral grip strength (Tr. 711; *see* Tr. 270-72); (4) an evaluation performed on August 15, 2005 in which Michael Richardson, a physical therapist, observed Walker: (a) had a "normal, independent gait;" (b) "was independent while changing postures and mobility;" (c) had normal balance while sitting and standing; (d) had slightly reduced cervical ranges of motion; (e) had trunk and upper extremity strength that varied from 4-/5 to 4+/5; and (f) had normal sensations.[5] (Tr. 711; *see* Tr. 553); and (5) a September 27, 2006 consultative examination in which O.D. Raulston, M.D. ("Raulston"), opined, *inter alia*, that Walker was capable of a wide range of sedentary work duties but should not crouch or crawl, was limited in her ability to reach in all directions, should only occasionally reach overhead and have a sit-stand option.[6] (Tr. 712; *see* Tr. 632-34).

---

[5] An ALJ may utilize the opinions from physical therapists to gain insight into the severity of an individual's impairments and its effects on the individual's ability to work. *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1); *see generally* SSR 06-03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006).

[6] Raulston further found that Walker had a full range of motion in the shoulders, with no swelling or pain on motion; no difficulty rising from a chair or table; no clubbing, cyanosis, or edema of the extremities; and no motor weakness in the lower or upper extremities. (Tr. 627-28, 711.)

In reaching his RFC determination, the ALJ further stated:

> Claimant has not required orthopedic surgery, ER visits, frequent primary care physician visits or narcotic pain medication. During the critical period, she was independently ambulatory, with unimpaired bilateral manual dexterity, she responded well to the home exercises despite less than full compliance, she was independent in daily activities and did a wide range of household chores. Claimant did not undertake any lifestyle adaptations or home environment alterations to accommodate the impairment-driven restrictions she describes and there was no indicia of intractable pain, such as dramatic weight change, disuse muscle atrophy, guarding or premature aging in the critical period.

(Tr. 713.)

Contrary to Walker's arguments, it is clear that the ALJ did consider Raulston's opinion regarding Walker's limitations in reaching as he specifically mentioned Raulston's opinion in his RFC analysis. However, the ALJ ultimately determined, based on substantial medical evidence and other evidence in the record, that Walker's alleged reaching limitations would not affect her ability to perform sustained work activity on a regular and continuing basis and, thus, should not be incorporated into the RFC determination. The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. The medical evidence discussed above provides substantial support for the ALJ's RFC determination as there was evidence from other doctors indicating that Walker was not so limited in her ability to reach. In this case, the ALJ discussed the evidence in the record in making his RFC determination, adequately explained the reasoning for his RFC determination, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Because there is substantial evidence in the record that supports the ALJ's RFC assessment, the

10

Court concludes that the ALJ did not err by failing to include any limitations into her RFC determination. Consequently, the Commissioner's decision should be affirmed in this regard.

## 2. Consideration of All Functional Limitations

Walker also argues that the ALJ failed to properly consider all of her functional limitations. (Pl.'s Br. at 12- 14.) Walker claims that, although the ALJ found that Walker could not perform complex work instructions, he failed to resolve the issue of whether Walker could perform detailed work instructions. (Pl.'s Br. at 12.) In support of this argument, Walker states:

> State Agency physicians consistently reported that the Plaintiff is markedly limited in her ability [to] understand, remember and carry out detailed instruction and agreed that the Plaintiff was restricted to the ability to understand, remember and carry out only simple instructions and to make simple decisions. A consulting examiner, Dr. George Mount, found that the Plaintiff was seriously limited (i.e., less than satisfactory ability) in her capacity to understand, remember and carry out detailed instructions. The vocational expert witness testified that a marked limitation in the ability to understand, remember, or carry out detailed instructions could adversely affect the ability to perform the jobs of receptionist or appointment clerk and could preclude performance of such work. The treating psychiatrist, Dr. Burkett, whose opinion was submitted to the Appeals Council, agreed that the Plaintiff was seriously limited in her ability to understand, remember and carry out detailed instructions.

(Pl.'s Br. at 12-13 (internal citations omitted); see Tr. 279-82 (Mental Residual Functional Capacity Assessment ("MRFC") dated February 23, 2004 by Nancy Wilson, Ph.D.), 457-459 (MRFC dated July 1, 2004 by Jim Cox, Ph.D. (and reaffirmed on October 7, 2004 by M. Chappuis, Ph.D.)); Tr. 697-701 (Mental Residual Functional Capacity Questionnaire ("Questionnaire") dated November 16, 2009 by Joseph Burkett, M.D. ("Burkett"); Tr. 984-87 (Clinical Interview and Mental Status Examination dated September 28, 2009 by George Mount, Ph.D. ("Mount"); Tr. 996-1000 (Questionnaire dated September 29, 2009 by Burkett).)

Walker states that the jobs of both receptionist and appointment clerk that the ALJ found she was capable of performing require a reasoning development level ("RDL") of 3[7] and that having "a marked limitation in the ability to understand, remember and carry out detailed instructions would significantly impact upon [her] ability to successfully perform these jobs." (Pl.'s Br. at 13-14.) Walker claims that "the ALJ has failed to consider all of the mental limitations which would impact upon the Plaintiff's ability to successfully perform her past relevant work and his determination at step 4 of the sequential evaluation of disability that she can return to such work is not supported by substantial evidence." (Pl.'s Br. at 14.)

Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence (from non-examining sources) at both the administrative hearing and Appeals Council levels of administrative review. 20 C.F.R. §§ 404.1527(f), 416.927(f); SSR 96-6p, 1996 WL 374180, at *2-4 (S.S.A. July 2, 1996). Pursuant to SSR 96-6p, the ALJ and the Appeals Council are not bound by the state agency physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions. SSR 96-6p, 1996 WL 374180, at *2. In addition, the regulations, rulings, and relevant case law reflect that the ALJ should weigh all of the medical source opinions and articulate the reasons underlying the decisions he has made. *See generally* 20 C.F.R. §§ 404.1527(b), 416.927(b). The ALJ is entitled to consider treatment

---

[7] RDL 1 requires the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions[ and d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Dictionary of Occupational Titles* ("DOT"), App. C (Rev. 4th ed. 1991). RDL 2 requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations." *Id.* RDL 3 requires the ability to [a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form[ and d]eal with problems involving several concrete variables in or from standardized situations." *Id.*

history or any other relevant factor that tends to support or contradict a medical source opinion. *See* 20 C.F.R. §§ 404.1427(d), 416.927(d).

In this case, the ALJ found that Walker had the mental RFC capacity to perform jobs that did not involve complex work instructions. (Tr. 719.) In support of this determination, the ALJ relied, *inter alia*, on the following evidence: (1) a Medical Source Statement of Ability to Do Work-Related Activities (Mental) dated September 15, 2006 in which Carole Wadsworth, Ph.D. ("Wadsworth") opined that Walker had *no* limitations on her ability to understand, remember, and carry out instructions (including detailed instructions) and was moderately limited in "interacting appropriately with the public and responding to work pressures in a usual work setting and slight limitations in the abilities to interact appropriately with the public and coworkers and to respond to changes in a routine works [sic] setting" (Tr. 623, 715; *see* Tr. 623-25); (2) testimony at the December 7, 2006 administrative hearing from John F. Simonds, Ph.D., that Walker had severe depression but "it has been proven treatable and she was functioning in the mild to moderate range, with some limitations in concentration" (Tr. 716; *see* Tr. 52-54); and (3) a Mental Status Report dated June 28, 2004 in which Mario Renazco, M.D. ("Renazco"), a treating physician, opined that Walker had "focused well, had adequate memory, good insight and judgment, intact abstract thinking, and, while . . . she had some difficulty coping with stress, . . . she had fair abilities to relate to others and sustain work" (Tr. 716; *see* Tr. 379-80).

In addition, the ALJ also acknowledged and analyzed the opinions of the State Agency Medical Consultants ("SAMCs") in making his mental RFC determination as he noted that they opined in the Mental Residual Functional Capacity Assessment Forms ("MRFCs") that Walker had: (1) a "moderate degree of difficulty in her ability to maintain concentration, persistence or

13

pace;" (2) was markedly limited in her "abilities to understand, remember and carry out complex, detailed and even only [sic] simple job instructions and tasks;" and (3) "concluded she could understand, remember and carry [out] simple job instructions; make simple decisions; maintain attention and concentration for extend periods; interact appropriately with others; and respond appropriately to changes in routine work settings." (Tr. 715-16; *see* Tr. 279-82, 457-60.)

Furthermore, in support of his RFC determination, the ALJ also stated:

> Claimant has not required in-patient psychiatric care, frequent, intensive out-patient counseling or anti-psychotic medication. Ms. Walker has remained a MHMR client and her psychiatrists continued the conservative care in the closed period. The MHMR case worker notes show she was consistently alert, oriented and cooperative at the case manager home visits, manages her limited finances, seeks alternative funding for utilities, generally gets along with others, including friends, her older daughter and siblings, . . . keeps her apartment tidy, actively cooperates in maintaining her housing assistance . . . . Claimant raises her daughter as a single parent, with no indication of child protective services or law enforcement investigations, and she has not been the subject of court-ordered mental health proceedings. There is no post-onset indication of social isolation or gross emotional irregularities or cognitive limitations, and, excluding symptom magnification, there is no post-onset history of bizarre, aberrant or harmful behavior.

> I find that Dr. Simonds' opinion is consistent with and well supported by the evidence of record, including the treating psychiatrist [Renazco's] opinion and the more recent evidence at exhibit 31f,[8] and I generally accept the limitations he specified.

(Tr. 716 (internal citations omitted) (footnote added).

After the ALJ issued his decision, the Appeals Council reviewed such decision. The Appeals Council, in its July 17, 2010 letter indicating that the ALJ's October 30, 2009 decision was the final decision, stated:

---

[8] The documents at exhibit 31f are medical records from Tarrant County MHMR dated from November 7, 2006 to April 20, 2009. (Tr. 805-962.) These records indicate, in essence, that Walker was treated for medication maintenance and her depressive symptoms ranged from moderate to minor during this time period.

> The [ALJ] did not discuss exhibit 33F, a psychological consultative examination dated September 28, 2009 [and performed by George R. Mount, Ph.D.], because it did not relate to the period at issue. The Administrative Law Judge specifically limited the scope of the decision to no later than March 26, 2007 after finding that there was not a basis to reopen the subsequent allowance effective March 27, 2007. This is also true for the new evidence you submitted with your exceptions. This opinion evidence is dated November 16, 2009 and is from a treating source [Burkett] who has only seen the claimant for a period of 4 weeks.

(Tr. 680.)

Contrary to Walker's arguments, it is clear that the ALJ did consider the SAMCs' opinions regarding Walker's ability to understand, remember, and carry out detailed instructions. In addition, the Appeals Council specifically acknowledged and considered the opinions of Mount and Burkett and provided reasons for discounting such opinions. The ALJ ultimately determined, based on substantial medical evidence and other evidence in the record, that Walker's alleged mental limitations would be incorporated into the RFC as a limitation on performing jobs that did not involve complex instructions. As stated above, the ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. The medical evidence discussed above provides substantial support for the ALJ's RFC determination; consequently, the ALJ did not err and remand is not required.[9]

---

[9] Walker also argues that the ALJ erred in determining that Walker could perform her past relevant work as a receptionist or appointment clerk because such jobs have a reasoning development level ("RDL") of three, which is inconsistent with a RFC determination that limits her to jobs that do not involve detailed instructions. Because the Court has determined that the ALJ's mental RFC determination that Walker is limited to jobs that do not involve complex instructions is supported by substantial evidence and Walker did not raise such an argument based on this mental RFC determination, the Court will not consider this argument. *See* Court's November 16, 2010 Order Directing Case to Be Treated as An Appeal [doc. # 10] (stating that "the issues before the Court are limited to the exact issues properly raised and presented in the briefs and that any issue not properly raised and presented in the briefs will be deemed abandoned").

### 3. Evaluation of Medical Opinion Evidence

Walker also argues that the ALJ erred in failing to properly evaluate the medical opinion evidence. (Pl.'s Br. at 14-15.) Specifically, Walker claims that the Appeals Council improperly rejected the opinions of Burkett and erred by not properly analyzing the factors set forth in 20 C.F.R. §§ 404.1527(d)(2) and 416.927 before rejecting Burkett's opinions. (*Id.*)

Controlling weight is assigned to the opinions of a treating physician if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). *See also* 20 C.F.R. §§ 404.1527(e), 416.927(e). Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See id.*; *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)." *Newton*, 209 F.3d 448, 453 (5th Cir. 2000) (emphasis in original). Under the statutory analysis of 20 C.F.R. § 404.1527(d), the ALJ must

evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(d); *see also* 20 C.F.R. § 416.927(d); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996); SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).[10]

After the ALJ's decision, Walker submitted to the Appeals Council the opinion of Burkett that Walker was, *inter alia*, seriously limited in her ability to understand, remember and carry out detailed instructions. (Tr. 700.) As noted above, the Appeals Council stated that it had reviewed Burkett's opinion but was rejecting such opinion because: (1) it was not relevant to the issue of whether Walker was disabled during the period from February 3, 2003 through March 26, 2007, and (2) it was from a treating source that had only seen Walker for a period of four weeks.

Social Security regulations allow claimants to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision to deny benefits. 20 C.F.R. §§

---

[10] Pursuant to *Newton*, however, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(d) *only* if there is no other reliable medical evidence from another *treating or examining* physician that *controverts* the treating specialist. *See Newton v. Apfel*, 209 F.3d 448, 455-57 (5th Cir. 2000). An ALJ does *not* have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another" as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507-11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.") Because the Court concludes, *infra*, that the ALJ did perform a detailed analysis of Neal's opinion under the factors set forth in 20 C.F.R. § 404.1527(d), it is not necessary to determine whether there was other reliable medical evidence from another treating or examining physician that controverts Neal's opinion.

404.970(b), 404.976(b); *see Rodriguez v. Barnhart*, 252 F. Supp. 2d 329, 332 (N.D. Tex. 2003). The Appeals Council is required to evaluate the entire record, including any new and material evidence submitted by the claimant. *Id.* The Appeals Council's decision to decline to grant review of an ALJ's decision is part of the "final decision" and, as such, is reviewable in federal court. *See Higginbotham v. Barnhart*, 405 F.3d 332, 337-38 (5th Cir. 2005). In the Fifth Circuit, "evidence submitted by a claimant to the Appeals Council does not per se require remand to the Commissioner simply because the Appeals Council failed to address the evidence in its decision." *McGee v. Astrue*, No. 08-0831, 2009 WL 2841113, at *6 (W.D. La. Aug. 28, 2009) (citing *Higginbotham*, 405 F.3d at 332 and *Higginbotham v. Barnhart*, 163 F. App'x 279, 281-82 (5th Cir. 2006) ("*Higginbotham II*"))). "A court considering the final decision should review the record as a whole, including the new evidence, to determine whether the Commissioner's findings are supported by substantial evidence, and should remand only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported." *Lee v. Astrue*, No. 3:10-CV-155-BH, 2010 WL 3001904, at *7 (N.D. Tex. July 31, 2010) (citing *Higginbotham II*, 163 F. App'x at 281-82). Moreover, the Appeals Council is bound to follow the same rules for considering medical opinion evidence as the rules that bind ALJs. 20 C.F.R. § 404.1527(f)(3). The SSA specifically provides that all medical opinions are to be considered in determining the disability status of a claimant. 20 C.F.R. § 404.1527(b).

In this case, it is clear that the Appeals Council did consider and, ultimately, rejected the opinion of Burkett that was submitted after the ALJ's decision. As stated above, the ALJ or Appeals Council is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(d) *only* if there is no other reliable medical

evidence from another *treating or examining* physician that *controverts* the treating specialist. In this case, such an analysis was not required as there is evidence from both an examining and treating physician that controverted Burkett's opinion. Wadsworth examined Walker on September 15, 2006 for approximately three hours and opined that Walker had *no* limitations on her ability to understand, remember, and carry out instructions (including detailed instructions), was moderately limited in "interacting appropriately with the public and responding to work pressures in a usual work setting and [had] slight limitations in the abilities to interact appropriately with the public and coworkers and to respond to changes in a routine works [sic] setting." (Tr. 623-25.) In addition, Renazco, one of Walker's treating physicians, opined on June 28, 2004 that Walker had "focused well, had adequate memory, good insight and judgment, intact abstract thinking, and, while . . . she had some difficulty coping with stress, . . . she had fair abilities to relate to others and sustain work." (Tr. 716; *see* Tr. 379-80).

As to the Appeals Council's rejection of Burkett's opinion, the Court agrees that Burkett's opinion, which was given on November 16, 2009,[11] is not relevant to the issue in this case of whether Walker was disabled between February 3, 2003 and March 26, 2007.[12] *See, e.g., Torres v. Shalala*, 48 F.3d 887, 894 n.12 (5th Cir. 1995) (stating that evidence showing a degeneration of a claimant's condition after the expiration of his Title II insured status is not

---

[11] In the Questionnaire, Burkett noted that he had treated Walker every four weeks for twenty minutes each month. In addition, he indicated that Walker's highest Global Assessment of Functioning ("GAF") score the past year was 45 and that her impairments had lasted or could be expected to last at least 12 months. Even viewing these items in the light most favorable to Walker, there is no indication from Burkett's opinion that it relates back to the period from February 3, 2003 through March 26, 2007. Furthermore, the treatment records indicate that Burkett did not begin treating Walker until approximately July 2007, which was also after the relevant time period. (*See, e.g.,* Tr. 805, 808, 819, 835, 873, 891, 912, 917; *see also* Pl.'s Br. at 14.)

[12] Although the ALJ erred in stating that Burkett had only seen Walker for a period of four weeks, any such error was harmless as substantial evidence supports the decision of the ALJ and the Appeals Council.

relevant to the Commissioner's Title II disability analysis); *Thompson v. Astrue*, No. 10-182, 2010 WL 5651401, at *9-10 (E.D. La. Dec. 22, 2010); *Lottinger v. Astrue*, No. 4:09-CV-971, 2010 WL 744245, at *6 (S.D. Tex. Feb. 26, 2010) (stating that the ALJ had good cause to give very little weight to a treating physician's opinions that were, *inter alia*, completed more than two years before the claimant's date that she was last insured). In addition, even assuming that Burkett's opinion was relevant to the applicable time period, there are other examining and treating physicians' opinions that contradicted Burkett's opinion. Thus, the ALJ had good cause to reject Burkett's opinion and the Court does not find that Burkett's opinion dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported. Because substantial evidence supports the Appeals Council's decision to reject Burkett's opinion, remand is not required.

### B. **Hypothetical Question to the Vocational Expert**

The next issue is whether the ALJ, erred at Step Four by determining that Walker could return to her past relevant work after having found that Walker suffered from severe impairments that limited her ability to perform work-related activities. Specifically, Walker argues that the ALJ found that she was moderately limited in her ability to maintain concentration, persistence or pace but failed to include such limitation in the hypothetical question to the VE. (Pl.'s Br. at 15-16.)

A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the

record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The hypothetical presented to the vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ's residual functional capacity assessment, and the claimant or his representative must be afforded the opportunity to correct any deficiencies in the ALJ's question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). If the ALJ's hypothetical fails to incorporate all such functional limitations, the ALJ's determination is not supported by substantial evidence. *Id.*

In this case, the ALJ determined that Walker had the RFC to perform sedentary work with the following limitations: (1) she could not walk for prolonged periods over ten continuous minutes; (2) she must be permitted to change positions on an hourly basis; and (3) she could not perform complex work instructions. During the hearing, the ALJ asked the VE to consider the following hypothetical:

> If the claimant were able to work at the sedentary exertional level which did not require prolonged walking over ten minutes at a time; did not require complex work instruction; and permitted a change of positions on an hourly basis, would there be any of her prior work she'd be able to perform?

(Tr. 1040.) Based on this hypothetical, the VE testified that Walker was capable of performing her past relevant work as a receptionist and appointment clerk. (*Id.*)

In the hypothetical question that the ALJ asked the VE, the ALJ properly incorporated all the functional limitations that he had found in his RFC assessment into the hypothetical question. (*Compare* Tr. 718-19 *with* Tr. 1040.) The ALJ was not required to incorporate the additional limitations regarding Walker's ability to maintain concentration, persistence, or pace because the ALJ did not find that these limitations were supported by substantial evidence. Because the ALJ properly incorporated all the functional limitations that he had found in her RFC assessment into

21

the hypothetical question and the RFC determination is supported by substantial evidence, as discussed above, the Court finds that the ALJ did not present a defective hypothetical to the VE.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED
### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **June 15, 2011** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed

and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED June 1, 2011.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv